FILED 11 JAN 26 11:24USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 08-447-RE |
| | CR 08-441-RE |
| Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| JAMES JOSEPH BJORNE BENNETT, | |
| Defendant. | |

REDDEN, Judge:

  Defendant James Joseph Bjorne Bennett filed the following pro se motions: (1) Motion to Dismiss Indictment with Prejudice for Speedy Trial Violations, Conditions of Confinement, and Pretrial Release (doc. 97); (2) Motion for Discovery (doc. 99); (3) Motion to Dismiss Indictment with Prejudice Due to Structural Error and Speedy Trial Violation (doc. 100); (4) Motion for Reconsideration of Court Order Allowing Motion to Compel Defendant to Provide Buccal Swab

PAGE 1 - OPINION AND ORDER

(doc. 103); (5) Motion to Dismiss Indictment with Prejudice and/or Release Defendant for Continued Denial of Access to Court (doc. 107); (6) Motion for <u>Faretta</u> Violation and Ineffective Assistance of Counsel (doc. 118); (7) Motion to Dismiss Indictment with Prejudice Due to Structural Error and Speedy Trial Violation (doc. 120); and (8) Motion for Substitution of Counsel (doc. 121). For the reasons that follow, the motions are DENIED.

## Motions to Dismiss

Defendant filed several <u>pro se</u> motions arguing that he is entitled to pretrial release, and urging the court to dismiss the indictment for speedy trial violations, "inhumane" prison conditions, denial of access to the courts, <u>Faretta</u> violation, and ineffective assistance of counsel.

**Pretrial Release**

Defendant's renewed objections to his pretrial detention are without merit. Defendant's arguments for pretrial release are identical to the ones he raised in his August 24, 2009 <u>pro se</u> motion for pretrial release, which I denied after holding a hearing and reviewing the entire case file <u>de novo</u>. Sept. 21, 2009 Opinion and Order (doc. 57). In so doing, I found that no condition or combination of conditions would reasonably assure both the safety of the community and the appearance of defendant due to: (1) the nature and seriousness of the alleged five counts of bank robbery, and two counts of attempted bank robbery (*i.e.*, five counts of bank robbery, and two counts of attempted bank robbery); (2) defendant's alleged possession of a weapon during the commission of those crimes; (3) defendant's prior criminal history, which includes numerous drug-related convictions, a conviction for felon in possession of a firearm, and a conviction for domestic assault; (4) defendant's history of probation and supervised release failures, including at least three instances in which defendant failed to appear as required; and (5) defendant's

PAGE 2 - OPINION AND ORDER

history of substance abuse; (6) his admitted use of aliases; and (7) defendant's stated desire to leave the District of Oregon and return to the State of Alaska. On this record, there is more than a sufficient basis to conclude that defendant is both a danger to the community and a flight risk. Nothing in defendant's recent pro se filings provides a basis for reconsidering that conclusion.

**Speedy Trial**

The Speedy Trial Act, 18 U.S.C. § 3161 et seq., provides that a criminal defendant's trial must normally commence within seventy days of the filing of the indictment or the defendant's initial court appearance, whichever is later. Certain periods of delay, however, are excluded from the calculation of the seventy-day limit, including delays between the time of filing and the prompt disposition of pretrial motions and delays caused by continuances if the court sets forth in the record "its reasons for finding that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial." Id. §§ 3161 (h)(1)(D) & (h)(7)(A).

Defendant was indicted on October 2, 2008, and made his first appearance on October 3, 2008. A jury trial was set for December 9, 2008, well within the 70-day deadline set by the Act. Since his initial appearance, however, defendant has filed eight motions to continue trial and agreed to an additional joint motion for a continuance. In support of each of those motions, counsel represented that defendant was aware of his right to a speedy trial and agreed the continuance would result in excludable delay. See Nov. 7, 2008 Mot. to Continue, at 2 (doc. 11) (defendant "acknowledges his right to a speedy trial under the Speedy Trial Act and agrees that this motion will result in excludable delay under the Act."); Jan. 9, 2009 Mot. to Continue, at 1-2 (doc. 13) ("This motion is made based on Mr. Bennett's specific request . . . for additional time

PAGE 3 - OPINION AND ORDER

to conduct legal research . . . . Mr. Bennett specifically waives time for trial . . . ."); Mar. 16, 2009 Dec. in Supp. of Mot. to Continue, at 2 (doc. 19) ("Defendant also understands his rights provided by the Speedy Trial Act, and he agrees to waive those rights by this continuance, and agrees that this continuance constitutes excludable delay"); April 8, 2009 Dec. in Supp. of Mot. to Continue, at 2 (doc. 21) (same); Aug. 12, 2009 Dec. in Supp. of Mot. for Continuance, at 2 (doc. 32) (Defendant "waives his constitutional and statutory rights to a speedy trial"); Dec. 21, 2009 Dec. in Supp. of Mot. to Continue, at 2 (doc. 79) ("understands his right to a speedy trial, but that he also understands the need for effective preparation of his case and he therefore consents to a continuance of his trial"); Feb. 22, 2009 Dec. in Supp. of Mot. to Continue, at 2 (doc. 82) (same); Apr. 19, 2010 Joint Mot. to Continue (doc. 86) ("defendant joins in this motion and understands that the period of time from the date of the filing of this motion through September 14, 2010, constitutes excludable delay under 18 U.S.C. § 3161(h)(7)(A)"); Dec. in Supp. of Mot. to Continue, at 2 (doc. 90) (defendant "reiterated his consent to a continuance and agrees that a continuance of the trial is warranted in order to better assess the state of his mental health."). In granting each of those motions, I specifically found that the ends of justice served outweighed the best interests of the public and the defendant in a speedy trial because additional time was needed for pretrial investigation and trial preparation.

Defendant has also fired three of his four court-appointed attorneys due to irreparable breakdowns in attorney-client relationship. At the June 16, 2009 hearing on defendant's second motion for substitution of counsel, I appointed David Audet to represent defendant and continued the trial date because defendant's newly-appointed attorney needed additional time to prepare for trial. At the September 29, 2009 hearing on defendant's third motion for new counsel, I

PAGE 4 - OPINION AND ORDER

appointed Samuel Kauffman to represent defendant and again continued the trial date to allow defendant's fourth court-appointed attorney adequate time to conduct pretrial investigation and prepare for trial. Defendant expressly agreed to those delays. Accordingly, all of time from the filing date of the defendant's first motion to continue, November 7, 2009, through the January 25, 2011 trial date is excluded from the 70-day limit under 18 U.S.C. §§ 3161(h)(7)(A).[1]

Additionally, defendant has filed five pro se motions to dismiss the indictment, pro se motions for pretrial release and review of the magistrate's detention order, pro se motions for reconsideration, a pro se motion for discovery, and several hundred pages of briefing, exhibits, correspondence, and unsworn declarations. See docs. 35-48, 59-65, 77, 97-100, 102, 103, 107, 118, 120, 121. Each of those pretrial motions has resulted in further excludable delay under 18 U.S.C. § 3161(h)(1)(D). After seeking eight continuances, firing or attempting to fire each of his four court-appointed attorneys, and filing hundreds of pages of pro se pleadings, defendant cannot credibly claim that the government has violated his statutory right to a speedy trial.

In addition to the statutory right, defendant has a Sixth Amendment right to a speedy trial. United States v. Sutcliffe, 505 F.3d 944, 956 (9th Cir. 2007). To determine whether defendant's Sixth Amendment right was violated, the court must balance four factors: "(1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice" because of the delay. United States v. Beamon, 992

---

[1] On August 3, 2010, defendant's fourth court-appointed attorney moved to continue trial in order to obtain a mental health evaluation. See Aug. 3, 2010 Dec. in Supp. of Mot. to Continue, at 2 (doc. 90). An earlier mental health evaluation was conducted in April 2009. Apr. 10, 2009 Order Granting Motion for Psychiatric Exam (doc. 24). Those mental health evaluations caused further excludable delay under 18 U.S.C. 3161(h)(1)(A).

PAGE 5 - OPINION AND ORDER

F.2d 1009, 1012-13 (9th Cir. 2003) (citing <u>Doggett v. United States</u>, 505 U.S. 647 (1992)); <u>see also</u> <u>Barker v. Wingo</u>, 407 U.S. 514, 529 (1972) (the "<u>Barker</u> inquiry"). The length of delay in this case—approximately twenty-five months from the date of defendant's indictment—is long enough to trigger a <u>Barker</u> inquiry. <u>Sutcliffe</u>, 505 F.3d at 956-57; <u>Beamon</u>, 992 F.2d at 1012 (twenty-month delay is "more than sufficient to trigger the speedy trial inquiry"). Having considered the <u>Barker</u> factors as a whole, however, I find the government has not violated defendant's Sixth Amendment right to a speedy trial.

The delay in this case is entirely attributable to defendant's eight motions for continuance, repeated requests for substitution of counsel, and numerous <u>pro se</u> pretrial motions and pleadings. There is no evidence in the record that the government intentionally or negligently delayed trial, or sought any continuance to better prepare or otherwise gain an advantage. Nor has the court cited any impermissible reasons, such as over-crowded dockets, for any of the delays. Rather, all of the delays were caused by defendant and deemed necessary by the court in the interests of justice. Thus, the second <u>Barker</u> factor weighs against defendant's claim.

As to the third <u>Barker</u> factor, defendant's repeated assertions of his speedy trial rights are belied by his conduct and his repeated waiver of those rights in court. From the beginning of these proceedings, defendant has attempted to impede, distract from, and delay the adjudication of the underlying bank robbery charges. He has refused to discuss the bank robbery charges or pending trial with counsel. Aff. of Mr. Audet (doc. 54). He insists that the government has violated his speedy trial rights, his prison conditions violate his Eighth Amendment rights, this court lacks jurisdiction over his supervised release, and that he be returned to the District of Alaska. When his court-appointed attorneys have refused to pursue those claims, defendant has

PAGE 6 - OPINION AND ORDER

raised ineffective assistance claims against each of them. Despite the fact that the court has already rejected defendant's arguments, he has filed numerous, repetitious pro se pleadings raising identical claims. He has also accused each of his attorneys, the prosecutor, and the court of conspiring to force him to sign a plea agreement, proceed pro se, and/or deprive him of a fair trial. While he has asserted the right to a speedy trial, his antagonistic behavior has made it virtually impossible for any competent lawyer to represent him at trial. In light of defendant's manipulative conduct and repeated waiver of his speedy trial rights, this factor weighs heavily against his speedy trial claim.

When a defendant is responsible for the delay, he "carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim." United States v. Lam, 251 F.3d 852, 859 (9th Cir. 2001). Actual prejudice may be shown by demonstrating oppressive pretrial incarceration, anxiety and concern of the accused, or the possibility that the accused's defense will be impaired." Id. The last of these is most serious. Id. at 860. Although defendant makes a number of conclusory assertions about "inhumane" conditions of confinement at FDC Sheridan, these allegations are not sufficient to demonstrate impermissible prejudice in this case. Cf. Sutcliffe, 505 F.3d at 957 (allegations of anxiety and concern not sufficient where twenty-month delay "almost entirely attributable" to defendant's systematic effort to manipulate proceedings and sabotage his relationship with counsel). As discussed, the delays in this case were primarily the result of defendant's conduct in firing or attempting to fire each of his attorneys. Each of defendant's successive court-appointed attorneys needed additional time to review the extensive evidence in this case, which involved five separate bank robberies and two attempted bank robberies. Defendant clearly would have been prejudiced if the court had granted

PAGE 7 - OPINION AND ORDER

his requests for new counsel, but forced his newly-appointed attorney to go to trial without adequate time to review all of the evidence. Sutcliffe, 505 F.3d at 957. Considering the Barker factors as a whole, I find that defendant's right to a speedy trial has not been violated.

**Conditions of Confinement**

Defendant's complaints about prison conditions at FDC Sheridan do not provide a basis for dismissing the criminal indictment. "Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement." Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez, 411 U.S. 475, 484 (1973)). A civil rights action is the appropriate means of raising a constitutional challenge to the conditions of confinement. Badea, 931 F.2d at 574; Preiser, 411 U.S. 498-99. This criminal case is not the proper forum for litigating defendant's Eighth Amendment claims regarding prison conditions. Those complaints are irrelevant to the pending bank robbery charges. They are separate, independent claims that government officials have deprived him of constitutional rights during the course of his pretrial detention. Indeed, defendant has filed separate civil complaints in this court challenging his conditions of confinement. See Bennett v. Thomas, No. 08-cv-1464-BR; Bennett v. Thomas, No. 10-cv-1254-JO. He may pursue his affirmative civil claims in those cases, but those claims do not provide a basis for dismissal of the criminal indictment.

**Ineffective Assistance**

In each of the pending motions to dismiss the indictment, defendant asserts that all four of his court-appointed attorneys provided ineffective assistance based on their refusal to pursue speedy trial claims, civil rights claims, jurisdictional arguments, and pretrial release arguments.

To prevail on his claim of ineffective assistance of counsel, defendant must show

PAGE 8 - OPINION AND ORDER

"(1) grossly deficient performance by his counsel, and (2) resultant prejudice." Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must not only demonstrate that counsel committed errors, but that counsel's performance "fell below an objective standard of reasonableness," and that counsel's acts or omissions were not the "result of a reasonable professional judgment." Strickland, 466 U.S. at 688, 690. To demonstrate prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Here, defendant's ineffective assistance claim is without merit because he has failed to identify any objectively unreasonable errors made by any of his attorneys. It is not ineffective assistance for counsel to fail (or refuse) to raise meritless claims. Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982). Defendant's allegations that counsel conspired to coerce, threaten, or intimidate him into filing pro se or signing a plea agreement are not supported by any evidence in the record. Even if I were persuaded that counsel committed some error, defendant has failed to demonstrate a reasonable probability that but for his attorneys' purportedly deficient performance, the result of any of the proceedings thus far would have been different. Defendant's motion to dismiss for ineffective assistance of counsel is without merit.

### Structural Error/Faretta Violation

Defendant argues that the indictment must be dismissed because the court committed structural error by failing to provide warnings pursuant to Faretta v. California, 422 U.S. 806 (1975), prior to allowing him to file limited pro se motions related to pretrial release, speedy trial issues, and conditions of confinement. He further alleges that the court forced, threatened, and

coerced him into filing the present motions pro se. Defendant is wrong.

No one has forced defendant to do anything. Defendant has asserted his right to counsel and the court has provided him with four highly capable and experienced defense attorneys to represent him throughout all critical "proceedings where fundamental fairness might be thwarted" by the absence of counsel. Faretta v. California, 422 U.S. 806, 816 (1975). Defendant has not been forced to represent himself at trial or at any other critical stage of the proceedings.

The court did not violate Faretta by allowing defendant to file limited pro se pleadings "specifically related to release, speedy trial, or the conditions of his confinement, with defense counsel acting as an attorney-advisor with regard to such filings." Nov. 12, 2009 Minute Order (doc. 76). At the hearing on his motion to file limited pro se pleadings, defendant stated that proceeding pro se with respect to issues of release, speedy trial, and conditions of confinement was "exactly" what he desired. Nov. 10, 2009 Tr. of Proceedings, at 10:20-21. I granted defendant's motion to file pro se pleadings related solely to those issues because defense counsel had a "fundamental disagreement with regard to the validity and merit" of those claims, which threatened to undermine the entire attorney-client relationship and further delay trial. Mot. to Allow Pro Se Filings, at 1 (doc. 69). I made clear, however, that Mr. Kauffman would continue to represent defendant as to <u>all other issues</u> and that defendant was not to file any further pro se pleadings related to any other issue. I found that defendant voluntarily and intelligently made the choice to file pro se with respect to the discrete issues of release, speedy trial, and/or the conditions of his confinement.[2] Under the specific circumstances of this case, it was reasonable

---

[2]When I granted defendant's request to file limited pro se pleadings, I had already rejected his claims regarding pretrial release, speedy trial, and conditions of confinement. Sept. 21, 2009 Opinion and Order (doc. 57).

PAGE 10 - OPINION AND ORDER

to allow defendant to file limited pro se pleadings related solely to irrelevant and/or meritless claims in order to promote an expeditious, efficient, and fair resolution of the underlying criminal charges. Cf. United States v. Coupez, 603 F.2d 1347, 1350-51 (9th Cir. 1979) (option given by District Court of "split self and attorney representation were reasonable to assure a manageable and decorous proceeding and yet give [defendant] a full, fair trial").

### Denial of Access to Court

In two of his motions to dismiss, defendant asserts that the indictment should be dismissed because he has been denied access to the courts. Defendant's claim is without merit. In this case, the court has appointed four separate attorneys to represent defendant. Accordingly, defendant has had full access to the courts under the Constitution. See United States v. Robinson, 913 F.2d 712, 717 (9th Cir. 1990) ("the sixth amendment is satisfied by the offer of professional representation alone"); United States v. Wilson, 690 F.2d 1267, 1272 (9th Cir. 1982) (The offer of court-appointed counsel . . . satisfie[s] the Fifth Amendment obligation to provide meaningful access to the courts.").

### Motion for Discovery

Defendant is not entitled to discovery relating to a 2003 habeas corpus case filed by Darryl William Young and other unspecified "records in the custody and control of officials (FDC) Sheridan officials." Def.'s Mot. for Discovery, at 1. Under Federal Rule of Criminal Procedure 16(a)(1)(E), which governs discovery in a criminal case, a defendant is entitled to inspect documents and materials that are relevant to the defendant's response to the government's case-in-chief. United States v. Armstrong, 517 U.S. 456, 462-63 (1996).

Here, defendant's request for discovery appear to relate solely to his claims regarding the

conditions of his confinement. Those claims are not properly before this court and the requested materials are not relevant to his defense against the government's bank robbery and attempted bank robbery charges. Accordingly, I deny the motion for discovery. Cf. Armstrong, 517 U.S. at 463 (defendant not entitled to discovery related to selective prosecution claim because the claim "in not a defense on the merits of the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.").

### Motion for Reconsideration

On November 15, 2010, I granted the government's Motion to Compel Defendant to Provide a DNA Sample over defense counsel's objections. Based on the affidavit of FBI Special Agent Brandon Walker, I found probable cause to believe that defendant's DNA sample would produce evidence tying him one or more of the bank robberies in this case. On November 22, 2010, defendant filed a pro se Motion for Reconsideration of that order.

Although captioned a motion for reconsideration, defendant does not identify any new evidence, argument, case law, or any other valid basis for reconsideration. Instead, he simply reiterates the same arguments Mr. Kauffman raised in objecting to the government's motion and rehashes his complaints about prison conditions, alleged speedy trial violations, the "illegal" transfer of jurisdiction over his supervised release, and the allegedly ineffective assistance provided by each of his court-appointed attorneys. None of defendant's arguments provide a basis for reconsideration. Accordingly, I deny the motion.

### Motion for Substitution of Counsel

On December 29, 2010, defendant filed a motion for a fifth substitution of counsel. In the motion, defendant asserts ineffective assistance claims against each of his court-appointed

attorneys based on their refusal to pursue speedy trial claims, civil rights claims, jurisdictional arguments, and pretrial release arguments.

When considering a defense request for a change of counsel, the court must: (1) consider the timeliness of the motion; (2) make an adequate inquiry into the basis for the motion; and (3) determine whether the asserted conflict is so great as to result in a complete breakdown in communication and consequent inability to present a defense. United States v. Mendez-Sanchez, 563 F.3d 935, 942 (9th Cir. 2009). "[A] district court has broad discretion to deny a motion for substitution of counsel on the eve of trial if the substitution would require a continuance." United States v. Garcia, 924 F.2d 925, 926 (9th Cir. 1991); see also Prime, 431 F.3d at 1155 (denial of motion for substitution of counsel upheld, as quantity and complexity of evidence would have required a continuance). As to the second prong of the analysis, the court must make an inquiry that is "adequate to create a sufficient basis for an informed decision" to grant or deny the motion. Mendez-Sanchez, 563 F.3d at 942-43 (internal quotation omitted).

Having questioned defendant as to the basis of the motion, I find the conflict between defendant and his fourth court-appointed attorney is not extensive or irreconcilable. Counsel has shown no animosity towards defendant. Rather, defendant's pro se pleadings make clear that his dispute with counsel is the same dispute he had with each of his previous court-appointed attorneys. Defendant has now asserted identical claims of ineffective assistance against each of his court-appointed attorneys. Defendant wants his attorneys to pursue strategies and file motions which they disagree. This type of dispute is not a sufficient conflict to warrant substitution of counsel. See United States v. McKenna, 327 F.3d 830 (9th Cir. 2003) (Disputes over trial tactics is not a sufficient conflict to warrant substitution); Mendez-Sanchez, 563 F.3d at

PAGE 13 - OPINION AND ORDER

944 (affirming denial of a request for new counsel where the motion for substitute counsel was based on the "same breakdown in communications" that occurred with his previous lawyer); United States v. Corona-Garcia, 210 F.3d 973, 977 n.2 (9th Cir. 2000) (upholding denial of substitution and explaining that even if it found the conflict with respect to trial tactics severe, it would be "disinclined to reverse" because trial tactics are "committed to the discretion of defense counsel").

Throughout this case, defendant has manipulated the proceedings and his relationships with his four court-appointed attorneys. He claims he wants to be represented by counsel, but has made it virtually impossible for any competent attorney to carry out their professional responsibilities. Four separate lawyers and the court have now told defendant what he does not want to hear: his jurisdictional arguments, speedy trial claims, and complaints about conditions of confinement are not supported by the evidence and are irrelevant to the upcoming bank robbery trial. Defendant refuses to let go of those issues and "refuses to discuss the bank robbery and pending trial with" counsel. Nov. 10, 2009 Tr. of Proceedings, at 4-5 (doc. 92); Aff. of Mr. Audet (doc. 54). Instead, he has asserted identical ineffective assistance claims against each of his attorneys because they have refused to pursue those claims. See Dec. of Mr. Kauffman, ¶ 4 (doc. 70) (describing "fundamental disagreement with regard to the validity and merit of such filings"); Dec. of Mr. Kauffman, ¶ 4 (doc. 114) ("Mr. Bennett, again, stated his belief that I was providing ineffective assistance because I would not file certain motions and requests that he believes should be filed."). If the court appointed yet another attorney, it is likely that the same conflicts would again arise. Given his general unreasonableness and manipulative and behavior, defendant is not entitled to substitution of counsel. United States v. Smith, 282 F.3d 758, 764

PAGE 14 - OPINION AND ORDER

(9th Cir. 2002).

Furthermore, I find defendant's request for a <u>fifth</u> court-appointed attorney less than a month before the trial date untimely. Counsel has represented that he will be prepared for the upcoming trial. The government has already subpoenaed trial witnesses. Appointing new counsel would further delay this already two-year old case. Because defendant's motion for substitution is untimely and his reasons for substitution are unpersuasive, I deny the motion.

### Conclusion

For the reasons above, I DENY the following motions: (1) Motion to Dismiss Indictment with Prejudice for Speedy Trial Violations, Conditions of Confinement, and Pretrial Release (doc. 97); (2) Motion for Discovery (doc. 99); (3) Motion to Dismiss Indictment with Prejudice Due to Structural Error and Speedy Trial Violation (doc. 100); (4) Motion for Reconsideration of Court Order Allowing Motion to Compel Defendant to Provide Buccal Swab (doc. 103); (5) Motion to Dismiss Indictment with Prejudice and/or Release Defendant for Continued Denial of Access to Court (doc. 107); (6) Motion to Dismiss for <u>Faretta</u> Violation and Ineffective Assistance of Counsel (doc. 118); (7) Second Motion to Dismiss Indictment with Prejudice Due to Structural Error and Speedy Trial Violation (doc. 120); and (8) Motion for Substitution of Counsel (doc. 121).

IT IS SO ORDERED.

DATED this 26 day of January, 2011.

/s/ James A. Redden
James A. Redden
United States District Court Judge

PAGE 15 - OPINION AND ORDER